UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEELEY ANNE DAVIS,

                     Plaintiff,       **No. 6:17-cv-06168(MAT)**
                                           **DECISION AND ORDER**
          -vs-

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                   Defendant.
_____

## I.   Introduction

Keeley Anne Davis ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## II. Procedural Status

On July 12, 2013, Plaintiff protectively for DIB and SSI, alleging disability due to various mental impairments. Her applications were denied, and she requested a hearing. On April 14, 2015, Plaintiff appeared with her attorney before Administrative Law Judge John P. Costello ("the ALJ") for a hearing in Rochester, New York. Plaintiff testified, as did impartial vocational expert Carol McManus ("the VE").

On August 17, 2015, the ALJ issued an unfavorable decision. (T.17-32).[1] Applying the five-step sequential evaluation, the ALJ determined that Plaintiff meets the insured status requirement of the Act through December 31, 2015, and had not engaged in substantial gainful activity since January 15, 2012. At step two, the ALJ found that Plaintiff had the following severe impairments: depressive disorder anxiety disorder, post-traumatic stress disorder ("PTSD"), borderline personality disorder, tension headaches, alcohol dependence, cocaine dependence, cannabis dependence, and opioid dependence. (T.22). At step three, the ALJ further found that Plaintiff's mental impairments, considered singly or in combination, did not meet or medically equal the criteria of Listings §§ 12.04 (affective disorders), 12.06 (anxiety-related disorders), and 12.09 (substance addiction disorder), as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, and 12.09. The ALJ performed the special technique applicable to psychiatric impairments and determined that Plaintiff had mild limitations in activities of daily living; moderate limitations in social functioning; moderate limitations in maintaining concentration, persistence, or pace; and had experienced no episodes of decompensation of extended duration. (T.23-24). Prior to proceeding to step four, the ALJ determined

---

[1] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

that Plaintiff had the RFC to perform work at all exertional levels but was limited to simple, routine tasks and should work primarily alone, with only occasional supervision. (T.24). At step four, the ALJ concluded that Plaintiff had no past relevant work. At step five, the ALJ relied on the VE's testimony that a person of Plaintiff's age (25 years-old on the alleged onset date), and with her education (high school diploma), RFC, and work history, could perform the representative occupations of hospital cleaner (DOT #323.687-010, unskilled, medium), and mail clerk (DOT #209.687-026, unskilled, light), with 917,470 and 99,140 positions, respectively, available nationwide. Accordingly, the ALJ found that Plaintiff had not been under a disability as defined in the Act.

On January 31, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely brought this action.

## III. Scope of Review

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g) (stating the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126,

131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citation omitted).

## IV. Discussion

### A. Erroneous Weighing of Opinions from Treatment Providers (Plaintiff's Point I)

Plaintiff argues that the ALJ erred in giving the opinion of psychiatrist Dr. Catherina Litkei and Therapist Lorraine Eyth only "some weight." (See Pl's Br. at 10, 14-15). Dr. Litkei and Therapist Eyth were part of the Wayne Behavioral Health Network ("WBHN"), where Plaintiff received some of her treatment.

There is one treatment note in the record for Therapist Eyth. On March 24, 2015, Plaintiff had a counseling appointment with her. (T.512, 535). Plaintiff was awaiting a background check for Section 8 housing. (T.512, 535). She had custody of her children on weekends and all summer, and mentioned that she had some trouble with consistent discipline and implementing boundaries. (Id.). Therapist Eyth stated that Plaintiff attended group therapy despite experiencing anxiety and panic in group settings. (Id.).

There is likewise one treatment note from Dr. Litkei, who saw Plaintiff two dates later for medication management. (T.514-15,

536-37). Dr. Litkei reported that Plaintiff had self-adjusted her medication, so she reinstituted Plaintiff's medication regimen. (T.514, 536). Dr. Litkei observed that Plaintiff "attempts to put on a good face but easily gets clearly traumatized by past memories." (T.536). On examination, Dr. Litkei described Plaintiff as pleasant, alert, oriented, and cooperative; she was very aware of herself; she demonstrated no tangentiality or thoughts of self-harm or harming others; her thinking was logical; and she had good memory, insight, and judgment. (T.515, 536). Dr. Litkei noted that time constraints did not allow a full profile of Plaintiff's past history.

On April 15, 2015, Dr. Litkei and Therapist Eyth co-authored an opinion rating Plaintiff as having moderate limitations in all areas of mental functioning, which would become marked limitations if Plaintiff became anxious. (T.518-20). They also noted that Plaintiff suffered from confusion, difficulty concentrating, short-term memory loss, emotional lability, and headaches, and would miss more than four days of work per month due to her impairments. They also recommended restricting her to working 1-2 hours per day, 3 days per week, because Plaintiff had not been able to remain at a job for more than a month or two at a time.[2]

---

[2] There is no indication that Plaintiff's inability to maintain employment was related to symptomatology from her mental impairments. On May 21, 2014, in an intake interview at Finger Lakes Addictions Counseling & Referral Agency, Plaintiff informed Toni M. Tiballi, RN that she left her last job in March 2012, due to a probation violation. She left the job before that in January 2012, due to not passing a background check. (T.459).

The ALJ declined to give more than "some weight" to this opinion, and rejected their estimate of Plaintiff's absenteeism as "purely speculative." (T.28).

A treating source is the claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. §§ 404.1502, 416.902. The Second Circuit has reiterated that "[w]hether the 'treating physician' rule is appropriately applied depends on 'the nature of the ongoing physician-treatment relationship.'" Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989) (quotation omitted).

Plaintiff agrees that Dr. Litkei and Therapist Eyth[3] had only seen Plaintiff for one appointment as of the date of their opinion. (See Pl's Br. at 10). Thus, neither Dr. Litkei nor Therapist Eyth had a longitudinal view of Plaintiff's treatment when they co-authored their opinion. The Court finds that the lack of an ongoing, continuous treatment relationship weighs against applying the treating physician rule of deference to Dr. Litkei's opinion. See Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) (unpublished opn.) (finding that when a physician has only examined

---

[3] The Court recognizes that Therapist Eyth is not an acceptable medical source; as such, opinion from her, standing alone, would not be a "medical opinion" entitled to controlling weight even when it concerns an impairment within the realm of her expertise. See Diaz v. Shalala, 59 F.3d 307, 314 & n.8 (2d Cir. 1995).

a claimant once or twice, "his or her medical opinion is not entitled to the extra weight of that of a treating physician"); Comins v. Astrue, 374 F. App'x 147, 149 (2d Cir. 2010) (unpublished opn.) (treating physician who saw claimant once did not have ongoing relationship based). The Court finds that the ALJ did not err in declining to apply the treating physician rule to Dr. Litkei.

Nevertheless, even assuming that the joint opinion from Dr. Litkei and Therapist Eyth should have been analyzed in light of the treating physician rule, the Court still concludes that the ALJ's decision as to the weight it should be accorded is based on substantial evidence. The factors that must be considered when an opinion from a treating "acceptable medical source" is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." Clark v. Comm'r of Social Sec., 143 F.3d 115, 118 (2d Cir. 1998). Here, as the ALJ noted, the treatment records from prior to and around the time of Dr. Litkei and Therapist Eyth's opinion in April 2015, were sparse due to Plaintiff's lack of attendance, and were not reflective of the level of impairment to which those providers opined. (T.28). For instance, on June 23, 2014, therapist Kelly Smith-Mirisoloff at

WBHN met with Plaintiff off-site and noted she "was very sporadic with attendance." (T.439). On that date, Plaintiff said "everything was 'pretty good.'" The next day, Plaintiff was a "no show, no call" for her appointment. On July 10, 2014, Nurse Practitioner Janine Quinlan saw Plaintiff for medication management; her affect was reactive but her mood was "good," her thought process was coherent with no cognitive abnormalities, and her insight and judgment were adequate. (T.439). Plaintiff reported "no manic, no panic," and "[n]o obsessional thinking." (Id.). On July 22, 2014, Therapist Smith-Mirisoloff noted that Plaintiff's mood was "pleasant in session" with a congruent affect; her thought process was focused; some memory issues were noted but concentration was intact; and she did not report any panic attacks or anxiety related symptoms. On January 28, 2015, Therapist Smith-Mirisoloff observed that Plaintiff had not reported for therapy "for weeks." (T.506). While her mental status examination showed some stressors affecting her mood, her thought process was focused, she had no concentration issues, and she was interactive, cooperative, and calm. (T.506). A functional assessment on February 7, 2015, from Lakeview Mental Health Services showed Plaintiff was "completely self-sufficient" in most activities of daily living and health care management. (T.488-89). The assessment indicated "minimal" (i.e., monthly) reinforcement was needed for responding to mail, completing household responsibilities, expressing needs and wants

appropriately, and utilizing interpersonal skills; and "moderate" (i.e., weekly or bimonthly) reinforcement in regard to money management, utilizing community support and leisure recreational services, and resolving interpersonal conflicts.

Looking at the treatment records as a whole, the Court cannot find it was unreasonable for the ALJ to "question whether [Dr. Litkei's and Therapist Eyth's] findings are truly reflective" of Plaintiff's "mental state, or whether they are exaggerated." (T.28). Given Plaintiff's lack of frequency of treatment, and the generally unremarkable treatment notes, the ALJ did not error in his weighing of their opinion. See, e.g., Cichocki v. Astrue, 534 F. App'x 71, 75 (2d Cir. 2013) (unpublished opn.) ("Because [the treating source]'s medical source statement conflicted with his own treatment notes, the ALJ was not required to afford his opinion controlling weight."); Dieguez v. Berryhill, No. 15CIV2282ERPED, 2017 WL 3493255, at *5 (S.D.N.Y. Aug. 15, 2017) (finding that "it was reasonable for the ALJ to conclude that [the treating physician]'s otherwise unremarkable treatment notes were incompatible with the significant limitations she subsequently reported in her opinion" and ALJ did not err in declining to afford it controlling weight).

As Plaintiff points out, Dr. Litkei and Therapist Eyth continued to see her after they provided their opinion in April 2015. (See Pl.'s Br. at 11-12). These subsequent treatment records

were not provided to the ALJ but were first submitted in connection with Plaintiff's request for review by the Appeals Council. (T.5-6, 10, 522-63). Evidence submitted to the Appeals Council becomes part of the administrative record. Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996). As discussed further below, the subsequent records do not bolster the April 2015 opinion so as to compel a finding that the ALJ erred in declining to afford it greater weight.

The Court acknowledges that Plaintiff had a stretch of time where her symptoms worsened. At the end of April 2015, Dr. Litkei reported a possible drug interaction with Plaintiff's ADHD medication. (T.538). Plaintiff became upset because she felt she was doing well on the medication and had already applied "to return to school" (Id.). One week later, Therapist Eyth recorded that Plaintiff had an angry, anxious, and dysthymic mood; she was still upset about not being able to take her ADHD medication while taking Suboxone. (T.539). She had fair memory, fair/good attention and concentration, fair insight and judgment, fair impulse control, and was open, interactive, cooperative, and calm during the appointment. (T.539). Although Plaintiff reported a few panic attacks daily and mildly manic episodes, she was attending substance abuse counseling and a therapy group, and was looking forward to returning to school. (T.539).

Plaintiff missed several appointments with various providers at WHBN through June 2015, and ran out of her medication. (T.554). On

May 21, 2015, at a medication management appointment, Dr. Litkei noted that Plaintiff was "very agitated, chaotic," although she "tried to be cooperative;" she had a "great deal of difficulty staying focused and not working herself up." (T.552). Plaintiff appeared very anxious; her mood was nervous and her affect was labile. (Id.). However, on May 28, 2015, Kimberly Robinson called to check on her; Plaintiff reported that was "doing well" and her only complaints were related to her housing situation. (T.553). Plaintiff was a "no show" to appointments with Therapist Eyth and Dr. Litkei on June 2, 4, and 9, 2015. (T.553). On June 17, 2015, Anne Marie DeSanto called Plaintiff's pharmacy to review medications prescribed by Dr. Litkei and found that prescription refills from April 23rd and May 21st orders were still unfilled. (Id.). On July 9, 2015, Plaintiff contacted DeSanto requesting medication renewals, which were not given because she had missed so many appointments. (T.554). DeSanto noted that Plaintiff did not want to take responsibility for non-compliance with appointments, citing scheduling conflicts between FLACRA and WBHN, and staffing changes at WBHN; Plaintiff also minimized the number of appointments that she missed. (T.554). On July 14, 2015, Therapist Eyth described Plaintiff as open, interactive, cooperative, and calm; she had fair memory, fair to good attention and concentration, fair insight and judgment, and fair impulse control. Plaintiff had an anxious and dysthymic mood; however, Plaintiff

acknowledged she had not taken her psychiatric medications for two weeks. Therapist Eyth noted that Plaintiff "[d]oes not seem to see the cause and effect nature of this discontinuation of her medications. . . ." (T.554). Plaintiff stated she was looking forward to attending school and being busy, and spending more time with her children. On July 21, 2015, Plaintiff admitted to Nurse Practitioner Donna Fladd that when she was on her "medication regime she still had some depression but was fairly stable." (T.555).

Thus, it appears that Plaintiff had not only been non-compliant with counseling appointments, she had been non-compliant with her medication regimen during April and May, and into June and July. Although the treatment notes submitted to the Appeals Council do reflect some exacerbation of Plaintiff's symptoms over the course of a few months, they also demonstrate that this was due to Plaintiff's failure to be compliant with her prescribed medication regime and therapy schedule. They also evidence Plaintiff's recognition that when she was compliant, her symptoms improved. In short, the Court does not find that the new evidence from WBHN that Plaintiff presented to the Appeals Council "alter[ed] the weight of the evidence so dramatically," Bushey v. Colvin, 552 F. App'x 97, 98 (2d Cir. 2014) (unpublished opn.), to require a different weighing of Dr. Litkei and Therapist Eyth's opinion.

## B.    Failure to Recontact Treating Sources (Plaintiff's Point III)

Relatedly, Plaintiff argues that because the ALJ did not give full weight to the opinion of Dr. Litkei and Therapist Eyth, he was required to recontact those providers or request additional evidence. (See Pl.'s Br. at 22-23). There is caselaw in this Circuit that stands for the proposition that "[i]f the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician." Correale-Englehart v. Astrue, 687 F. Supp.2d 396, 428 (S.D.N.Y. 2010) (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record.")). "Similarly, the ALJ has a duty to 'seek additional evidence or clarification from [the] medical source when a report from [that] medical source contains conflict or ambiguity that must be resolved, [or] the report does not contain all the necessary information.'" Correale-Englehart, 687 F. Supp.2d at 428 (quoting 20 C.F.R. § 404.1512(e)(1); citing Perez, 77 F.3d at 47; brackets in original).

Here, however, Dr. Litkei's and Therapist Eyth's opinion was not internally conflicting or ambiguous. The ALJ had all of the available records from WBNH, the mental health provider with which

Dr. Litkei and Therapist Eyth were associated. The Court recognizes that additional records from WBHN were submitted to the Appeals Council, but, as discussed above, the Court has reviewed them carefully and finds that they do not provide a justification for the extreme limitations assigned by Dr. Litkei and Therapist Eyth. Therefore, as discussed above, the Court finds that substantial evidence supports the ALJ's weighing of their opinion. In addition, the record contained a consultative psychiatric evaluation by Dr. Brownfeld. See Cichocki, 534 F. App'x at 75 (where ALJ properly declined to afford controlling weight to treating source statement, "[t]he ALJ could therefore afford weight to the expert opinion provided by [the consultative examiner]"). The Court finds that under the circumstances present here, the ALJ did not abuse his discretion in declining to recontact Dr. Litkei and Therapist Eyth.

### C. Erroneous Weighing of Opinions from Consultative Psychologist and Review Psychiatrist (Plaintiff's Point I)

Plaintiff argues that the ALJ erroneously assigned greater weight to the opinions from consultative examiner Adam Brownfeld, Ph.D. and state agency review psychiatrist J. Echevarria, M.D.

On August 9, 2013, Plaintiff underwent a psychiatric evaluation with Dr. Brownfeld who noted that she had appropriate eye contact, coherent and goal-directed thought processes, full and appropriate affect, euthymic mood, intact attention and concentration, and mildly impaired memory. (T.327). Dr. Brownfeld

stated that Plaintiff had no evidence of limitations in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, and relating adequately with others; and mild limitations in maintaining a regular schedule, learning new tasks, performing complex tasks independently, and making appropriate decisions (T.327-28). Dr. Brownfeld opined that Plaintiff was moderately limited in dealing with stress but, overall, her psychiatric impairments were not significant enough to interfere with her ability to function on a daily basis. (T.328).

On August 19, 2013, J. Echevarria, M.D., a state agency psychiatrist, reviewed the record and opined that Plaintiff's mental impairments resulted in mild limitations of activities of daily living; mild limitations in social functioning; and mild limitations in maintaining concentration, persistence, or pace. (T.74, 83). Dr. Echevarria therefore concluded that Plaintiff's mental impairments were not severe. (Id.).

The ALJ gave significant weight to the opinion of Dr. Brownfeld because he found it to be consistent with the record as a whole showing moderate limitations dealing with stress and with Plaintiff's treatment history and activities of daily living. (T.28). The ALJ gave Dr. Echevarria's opinion significant weight, but found that subsequent evidence demonstrated greater limitations than provided by Dr. Echevarria. (T.29). Plaintiff objects to the

ALJ's weighing of these opinions more heavily than Dr. Litkei and Therapist Eyth's opinion. (See Pl.'s Br. at 9, 15-17).

An ALJ may rely on the opinion of a consultative examiner or non-examining state agency consultant as substantial evidence in support of an RFC determination. See, e.g., Diaz, 59 F.3d at 313 (concluding that the opinions of non-examining physicians can constitute substantial evidence when, as here, they are consistent with other medical evidence of record); Heagney-O'Hara v. Comm'r of Soc. Sec., 646 F. App'x 123, 126 (2d Cir. 2016) (unpublished opn.) ("[T]he ALJ gave great weight to the opinion of Dr. Goldman. Even though Dr. Goldman also lacked a treating relationship with Heagney-O'Hara, his opinion regarding Heagney-O'Hara's healing progress and ability to use her hand was consistent with the objective medical evidence in the record."); Suarez v. Colvin, 102 F. Supp.3d 552, 577 (S.D.N.Y. 2015) ("[A]n ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence.") (collecting cases). The ALJ articulated proper bases for the weight given to both of these opinions, and his findings are consistent with the evidence as a whole, in particular, the treatment notes from WBHN discussed supra in Section IV.A. See, e.g., Frawley v. Colvin, No. 5:13-CV-1567 LEK/CFH, 2014 WL 6810661, at *9 (N.D.N.Y. Dec. 2, 2014) (ALJ's decision to give great weight to the opinion of a

consultative psychological examiner was supported by substantial evidence; this opinion was consistent with the same medical evidence relied on by the ALJ to reject the treating psychologist's opinion).

##### C. Erroneous Credibility Assessment (Plaintiff's Point II)

The Commissioner's regulations set forth a two-step process for evaluating symptoms such as pain, fatigue, weakness, depression, and nervousness. See 20 C.F.R. §§ 404.1529(c), 416.929(c). First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms; if so, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). Thus, while an ALJ is required to consider a claimant's reports about her symptoms and limitations, see 20 C.F.R. §§ 404.1529(a), 416.929(a), an ALJ is "not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record[.]" Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). "While it is 'not sufficient for the [ALJ] to make a single, conclusory statement that' the claimant is not credible or simply to recite the relevant factors, remand is not required where 'the evidence of record permits us to glean the

rationale of an ALJ's decision,"' Cichocki, 534 F. App'x at 76
(quoting Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983);
internal citation omitted; alteration in original).

The ALJ first found Plaintiff to be less than fully credible
"due to her spotty compliance with treatment[,]" (T.30), including
evidence that she had been discharged from a treatment program due
to poor compliance and had attended various treatment programs "due
to ulterior motives, such as to have paperwork to be filled out for
[disability applications]." (T.30 (citation omitted)). SSR 96-7p
provides that "the adjudicator must not draw any inferences about
an individual's symptoms and their functional effects from a
failure to seek or pursue regular medical treatment without first
considering any explanations that the individual may provide, or
other information in the case record, that may explain infrequent
or irregular medical visits or failure to seek medical treatment."
Titles II & XVI: Evaluation of Symptoms in Disability Claims:
Assessing the Credibility of an Individual's Statements, SSR 96-7P,
1996 WL 374186, at *7 (S.S.A. July 2, 1996).

Here, there is no indication that Plaintiff's noncompliance
with the treatment plan was due to symptomatology resulting from
her mental impairments. The ALJ correctly noted that when Plaintiff
failed to attend her appointments and programs, it was "not due to
her mental impairments impeding treatment, but rather it was
because she could not arrange transportation." (T.30). Moreover,

the ALJ did not err in drawing an adverse inference based on Plaintiff's motivation. In January 2015, Plaintiff was contacted regarding whether she wanted to continue treatment after missing numerous appointments; Plaintiff called back to say she wanted to discuss her Social Security appeal. (T.501). Her case manager scheduled an appointment to help her pull documents related to her appeal; Plaintiff was late to that appointment by an hour and 15 minutes. (T.502). Plaintiff also indicated that she was not interested in finding work due to her pending disability claim. (T.459). The ALJ properly considered Plaintiff's motivation in seeking treatment in evaluation of the credibility of her subjective allegations of disabling mental impairments. See Riley v. Astrue, No. 11-cv-6512T, 2012 WL 5420451, at *7 (W.D.N.Y. Nov. 6, 2012) ("The ALJ also properly noted that Dr. Drayer, the [claimant]'s treating physician, stated that [the claimant] might be exaggerating symptoms to receive disability benefits.") The Court finds no error in the ALJ's determination that Plaintiff's noncompliance with treatment negatively affected her credibility. See, e.g., Weed Covey v. Colvin, 96 F. Supp.3d 14, 33 (W.D.N.Y. 2015) (ALJ's finding that claimant's "credibility was diminished by her failure to regularly attend treatment sessions was supported by ample cancellation and no-show notes" which did "not suggest that [claimant] missed appointments as a result of [her] mental health;

rather, they often referenced transportation issues, or that [she] was 'injured,' or that [she] cancelled without an explanation").

As an additional reason for declining to find Plaintiff's subjective statements "fully credible," the ALJ stated that her allegations of disability did not "comport with her activities of daily living[,]" which "appear to be largely unencumbered by her mental impairments." (T.30). A claimant's daily activities is a proper factor for the ALJ to consider in assessing credibility. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i).

The ALJ recited that Plaintiff "still has hobbies, she can still go outside, and she can still function and take care of herself." (T.30). The Court finds this reason for discounting Plaintiff's credibility to be unpersuasive. It is well-settled that "'[s]uch activities do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the [symptoms] of their disability in order to care for themselves.'" Woodford v. Apfel, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) (quoting Boyd v. Apfel, No. 97 CV 7273, 1999 WL 1129055, at *3 (E.D.N.Y. Oct. 15, 1999)). The Second Circuit has stated on "numerous occasions that 'a claimant need not be an invalid to be found disabled' under the Social Security Act." Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (quotation omitted).

Nonetheless, the Court finds that any error by the ALJ in this regard to be harmless because the remainder of the ALJ's

credibility assessment is well supported by other substantial evidence in the record. See, e.g., Barringer v. Comm'r of Soc. Sec., 358 F. Supp.2d 67, 82 n. 26 (N.D.N.Y. 2005) (ALJ misstatement of the record with respect to claimant's ability to vacuum and do the laundry "amounts to nothing more than harmless error where, as here, [the] credibility assessment is amply supported by other substantial evidence") (citing Rebeck v. Barnhart, 317 F. Supp.2d 1263, 1274 (D. Kan. 2004) (ALJ's conclusion as to claimant's ability to read books and newspapers not supported by substantial evidence; "however, other evidence amply supports the ALJ conclusion to discount [claimant]'s testimony in part based on his daily activities"); other citation omitted).

Finally, the ALJ did not find Plaintiff's "complaints wholly credible because the only treating sources who opined that the claimant had any physical exertional or non-exertional limitations were Dr. Litkei and [Therapist] Eyth." (T.30). As the ALJ discussed earlier in his decision, he found those opinions "problematic" because, inter alia, both sources only had seen her on one occasion each and their severely restrictive assessment was not supported by the contemporaneous treatment records. This finding is not legally erroneous or unsupported by substantial evidence, as discussed supra in Section IV.A.

## V.    Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is free of legal error and is supported by substantial evidence. Therefore, it is affirmed. Plaintiff's motion for judgment on the pleadings is denied and the Commissioner's motion for judgment on the pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:    April 27, 2018
          Rochester, New York.